SILVERMAN, Circuit Judge,
with whom TALLMAN, Circuit Judge concurs, dissenting:
This case has nothing to do with playing sudoku, checking email, fibbing on dating sites, or any of the other activities that the majority rightly values. It has everything to do with stealing an employer’s valuable information to set up a competing business with the purloined data, siphoned away from the victim, knowing such access and use were prohibited in the defendants’ employment contracts. The indictment here charged that Nosal and his co-conspirators knowingly exceeded the access to a protected company computer they were given by an executive search firm that employed them; that they did so with the intent to defraud; and further, that they stole the victim’s valuable proprietary information by means of that fraudulent conduct in order to profit from using it. In ridiculing scenarios not remotely presented by this case, the majority does a good job of knocking down straw men—far-fetched hypothetical involving neither theft nor intentional fraudulent conduct, but innocuous violations of office policy.
The majority also takes a plainly written statute and parses it in a hyper-complicated way that distorts the obvious intent of Congress. No other circuit that has considered this statute finds the problems that the majority does.
18 U.S.C. § 1030(a)(4) is quite clear. It states, in relevant part:
(a) Whoever—
(4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value ...
shall be punished....
Thus, it is perfectly clear that a person with both the requisite mens rea and the specific intent to defraud—but only such persons—can violate this subsection in one of two ways: first, by accessing a computer without authorization, or second, by exceeding authorized access. 18 U.S.C. § 1030(e)(6) defines “exceeds authorized access” as “to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.”
“As this definition makes clear, an individual who is authorized to use a computer for certain purposes but goes beyond those limitations is considered by the CFAA as someone who has ‘exceeded] authorized access.’ ” LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1133 (9th Cir.2009).
“[T]he definition of the term ‘exceeds authorized access’ from § 1030(e)(6) implies that an employee can violate employer-placed limits on accessing information stored on the computer and still have authorization to access that computer. The plain language of the statute therefore indicates that ‘authorization’ depends on actions taken by the employer.” Id. at 1135. *865 In Brekka, we explained that a person “exceeds authorized access” when that person has permission to access a computer but accesses information on the computer that the person is not entitled to access. Id. at 1133. In that case, an employee allegedly emailed an employer’s proprietary documents to his personal computer to use in a competing business. Id. at 1134. We held that one does not exceed authorized access simply by “breachfing] a state law duty of loyalty to an employer” and that, because the employee did not breach a contract with his employer, he could not be liable under the Computer Fraud and Abuse Act. Id. at 1135, 1135 n. 7.
This is not an esoteric concept. A bank teller is entitled to access a bank’s money for legitimate banking purposes, but not to take the bank’s money for himself. A new car buyer may be entitled to take a vehicle around the block on a test drive. But the buyer would not be entitled—he would “exceed his authority”—to take the vehicle to Mexico on a drug run. A person of ordinary intelligence understands that he may be totally prohibited from doing something altogether, or authorized to do something but prohibited from going beyond what is authorized. This is no doubt why the statute covers not only “unauthorized access,” but also “exceed[ing] authorized access.” The statute contemplates both means of committing the theft.
The majority holds that a person “exceeds authorized access” only when that person has permission to access a computer generally, but is completely prohibited from accessing a different portion of the computer (or different information on the computer). The majority’s interpretation conflicts with the plain language of the statute. Furthermore, none of the circuits that have analyzed the meaning of “exceeds authorized access” as used in the Computer Fraud and Abuse Act read the statute the way the majority does. Both the Fifth and Eleventh Circuits have explicitly held that employees who knowingly violate clear company computer restrictions agreements “exceed authorized access” under the CFAA.
In United States v. John, 597 F.3d 263, 271-73 (5th Cir.2010), the Fifth Circuit held that an employee of Citigroup exceeded her authorized access in violation of § 1030(a)(2) when she accessed confidential customer information in violation of her employer’s computer use restrictions and used that information to commit fraud. As the Fifth Circuit noted in John, “an employer may ‘authorize’ employees to utilize computers for any lawful purpose but not for unlawful purposes and only in furtherance of the employer’s business. An employee would ‘exceed[] authorized access’ if he or she used that access to obtain or steal information as part of a criminal scheme.” Id. at 271 (alteration in original). At the very least, when an employee “knows that the purpose for which she is accessing information in a computer is both in violation of an employer’s policies and is part of[a criminally fraudulent] scheme, it would be ‘proper’ to conclude that such conduct ‘exceeds authorized access.’ ” Id. at 273.
Similarly, the Eleventh Circuit held in United States v. Rodriguez, 628 F.3d 1258, 1263 (11th Cir.2010), that an employee of the Social Security Administration exceeded his authorized access under § 1030(a)(2) when he obtained personal information about former girlfriends and potential paramours and used that information to send the women flowers or to show up at their homes. The court rejected Rodriguez’s argument that unlike the defendant in John, his use was “not criminal.” The court held: “The problem with Rodriguez’s argument is that his use of *866 information is irrelevant if he obtained the information without authorization or as a result of exceeding authorized access.” Id.; see also EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 583-84 (1st Cir.2001) (holding that an employee likely exceeded his authorized access when he used that access to disclose information in violation of a confidentiality agreement).
The Third Circuit has also implicitly adopted the Fifth and Eleventh circuit’s reasoning. In United States v. Teague, 646 F.3d 1119, 1121-22 (8th Cir.2011), the court upheld a conviction under § 1030(a)(2) and (c)(2)(A) where an employee of a government contractor used his privileged access to a government database to obtain President Obama’s private student loan records.
The indictment here alleges that Nosal and his coconspirators knowingly exceeded the authority that they had to access their employer’s computer, and that they did so with the intent to defraud and to steal trade secrets and proprietary information from the company’s database for Nosal’s competing business. It is alleged that at the time the employee coconspirators accessed the database they knew they only were allowed to use the database for a legitimate business purpose because the co-conspirators allegedly signed an agreement which restricted the use and disclosure of information on the database except for legitimate Korn/Ferry business. Moreover, it is alleged that before using a unique username and password to log on to the Korn/Ferry computer and database, the employees were notified that the information stored on those computers were the property of Korn/Ferry and that to access the information without relevant authority could lead to disciplinary action and criminal prosecution. Therefore, it is alleged, that when Nosal’s co-conspirators accessed the database to obtain Korn/Ferry’s secret source lists, names, and contact information with the intent to defraud Korn/Ferry by setting up a competing company to take business away using the stolen data, they “exceed[ed their] authorized access” to a computer with an intent to defraud Korn/Ferry and therefore violated 18 U.S.C. § 1030(a)(4). If true, these allegations adequately state a crime under a commonsense reading of this particular subsection.
Furthermore, it does not advance the ball to consider, as the majority does, the parade of horribles that might occur under different subsections of the CFAA, such as subsection (a)(2)(C), which does not have the scienter or specific intent to defraud requirements that subsection (a)(4) has. Maldonado v. Morales, 556 F.3d 1037, 1044 (9th Cir.2009) (“The role of the courts is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies.”) (citation and internal quotation marks omitted). Other sections of the CFAA may or may not be unconstitutionally vague or pose other problems. We need to wait for an actual case or controversy to frame these issues, rather than posit a laundry list of wacky hypotheticals. I express no opinion on the validity or application of other subsections of 18 U.S.C. § 1030, other than § 1030(a)(4), and with all due respect, neither should the majority.
The majority’s opinion is driven out of a well meaning but ultimately misguided concern that if employment agreements or internet terms of service violations could subject someone to criminal liability, all internet users will suddenly become criminals overnight. I fail to see how anyone can seriously conclude that reading ESPN, com in contravention of office policy could come within the ambit of 18 U.S.C. § 1030(a)(4), a statute explicitly requiring an intent to defraud, the obtaining of *867 something of value by means of that fraud, while doing so “knowingly.” And even if an imaginative judge can conjure up farfetched hypotheticals producing federal prison terms for accessing word puzzles, jokes, and sports scores while at work, well, ... that is what an as-applied challenge is for. Meantime, back to this case, 18 U.S.C. § 1030(a)(4) clearly is aimed at, and limited to, knowing and intentional fraud. Because the indictment adequately states the elements of a valid crime, the district court erred in dismissing the charges.
I respectfully dissent.